**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| NICHOLAS W. FULTON, derivatively on behalf of OVASCIENCE, INC., | |
| Plaintiff, | |
| vs. | Civil Action No: 1:17-cv-00869-RDM |
| MICHELLE DIPP, RICHARD ALDRICH, JEFFREY D. CAPELLO, MARY FISHER, JOHN HOWE, III, MARC KOZIN, THOMAS MALLEY, and JOHN SEXTON, | |
| Defendants, | |
| and | |
| OVASCIENCE, INC., a Delaware corporation, | |
| Nominal Defendant. | |

**PLAINTIFF'S ANSWERING BRIEF IN OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS THE VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT**

Dated:  November 17, 2017

**OF COUNSEL:**

**NEWMAN FERRARA LLP**
Jeffrey M. Norton
1250 Broadway, 27th Floor
New York, New York 10001

**KRANENBURG**
Werner R. Kranenburg
80-83 Long Lane
London EC1A 9ET
United Kingdom

**RIGRODSKY & LONG, P.A.**
Seth D. Rigrodsky (#3147)
Brian D. Long (#4347)
Gina M. Serra (#5387)
Jeremy J. Riley (#5791)
2 Righter Parkway, Suite 120
Wilmington, DE 19803
(302) 295-5310

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

I.     INTRODUCTION ...................................................................................................1

II.    RELEVANT BACKGROUND .............................................................................3

III.   ARGUMENT .........................................................................................................6

   A.     Plaintiff Sufficiently Pleads Claims for Breaches of Fiduciary
Duty.......................................................................................................................6

     1.    Plaintiff Did Not Make a Litigation Demand ................................................6

     2.    Entire Fairness Standard Applies .................................................................9

       a.    OvaScience's Non-Employee Director Compensation is
Not the Result of Fair Dealing ..............................................................10

       b.    OvaScience's Non-Employee Director Compensation is
Not a Fair Price .....................................................................................12

   B.     Plaintiff States a Claim for Unjust Enrichment ............................................12

   C.     Plaintiff States a Claim for Waste of Corporate Assets................................13

   D.     Defendants' Material Misstatements and Omissions in
OvaScience's Proxy Statements Regarding the Use of Black-
Scholes Violate Section 14(a) of the Exchange Act ....................................14

   E.     The Complaint Sufficiently Alleges a Causal Connection
Between the Material Misstatements and Harm to Shareholders ..................18

IV.    CONCLUSION....................................................................................................19

# TABLE OF AUTHORITIES

**Cases**

*ACP Master, Ltd. v. Sprint Corp.*,
  2017 WL 3105858 (Del. Ch. July 21, 2017), *opinion corrected and superseded*,
  2017 WL 3421142 (Del. Ch. July 21, 2017) ........................................................................... 11

*Aguilar v. Boulder Brands, Inc.*,
  2013 WL 2481549 (S.D. Cal. June 10, 2013) ......................................................................... 11

*Arbaugh v. Y&H Corp.*,
  546 U.S. 500 (2006) ................................................................................................................. 6

*Ausikaitis v. Kiani*,
  962 F. Supp. 2d 661 (D. Del. 2013) ...................................................................................... 18

*Bertoglio v. Texas Int'l Co.*,
  488 F. Supp. 630 (D. Del. 1980) ........................................................................................... 17

*California Pub. Employees' Ret. Sys. v. Chubb Corp.*,
  394 F.3d 126 (3d Cir. 2004) ................................................................................................... 14

*Calma v. Templeton*,
  114 A.3d 563 (Del. Ch. 2015) .......................................................................... 2, 9, 10, 11, 13

*Cinerama, Inc. v. Technicolor, Inc.*,
  663 A.2d 1156 (Del. 1995) .................................................................................................... 10

*In re Dole Food Co. S'holder Litig.*,
  2015 WL 5052214 (Del. Ch. Aug. 27, 2015) ....................................................................... 11

*In re DSI Renal Holdings, LLC*,
  574 B.R. 446 (Bankr. D. Del. 2017) ..................................................................................... 13

*Dubroff v. Wren Holdings, LLC*,
  2011 WL 5137175 (Del. Ch. Oct. 28, 2011) ........................................................................ 13

*Espinoza v. Zuckerberg*,
  124 A.3d 47 (Del. Ch. 2015) ........................................................................................... 13, 14

*Fisher v. Kanas*,
  467 F. Supp. 2d 275 (E.D.N.Y. 2006) .................................................................................. 17

*Gesoff v. IIC Indus., Inc.*,
  902 A.2d 1130, 1145 (Del. Ch. 2006) ................................................................................... 10

*Gould v. Am.-Hawaiian S. S. Co.*,
    535 F.2d 761 (3d Cir. 1976) ........................................................................................ 14

*Intl. Broadcasting Corp. v Turner*,
    734 F. Supp. 383 (D. Minn. 1990) ............................................................................. 19

*Khanna v. McMinn*,
    2006 WL 1388744 (Del. Ch. May 9, 2006) ................................................................ 7

*Leslie v. Telephonics Office Techs., Inc.*,
    1993 WL 547188 (Del. Ch. Dec. 30, 1993) ............................................................... 7

*In re Midlantic Corp. S'holder Litig.*,
    758 F. Supp. 226 (D.N.J. 1990) ................................................................................ 18

*Nemec v. Shrader*,
    991 A.2d 1120 (Del. 2010) ........................................................................................ 12

*Parsons v. Jefferson-Pilot Corp.*,
    789 F. Supp. 697 (M.D.N.C. 1992) ........................................................................... 18

*In re Riverstone Nat'l, Inc. S'holder Litig.*,
    2016 WL 4045411 (Del. Ch. July 28, 2016) ............................................................... 9

*Seinfeld v. Becherer*,
    461 F.3d 365 (3d Cir. 2006) ...................................................................................... 17

*Telxon Corp. v. Meyerson*,
    802 A.2d 257 (Del. 2002) ............................................................................................ 2

*In re Trados Inc. S'holder Litig.*,
    73 A.3d 17 (Del. Ch. 2013) ....................................................................................... 10

*In re Tyson Foods, Inc.*,
    2007 WL 2351071 (Del. Ch. Aug. 15, 2007) ........................................................... 18

*Weinberger v. UOP, Inc.*,
    457 A.2d 701 (Del. 1983) ............................................................................. 9, 10, 12

*Yaw v. Talley*,
    1994 WL 89019 (Del. Ch. Mar. 2, 1994) ..................................................... 6, 7, 8, 9

**Statutes**

Delaware Court of Chancery Rule 23.1 ................................................................. *passim*

**Other**

Ernst & Young LLP,
   *Financial reporting developments: A comprehensive guide,*
   *Share-based payment* (Oct. 2017)............................................................................. 16

PricewaterhouseCoopers LLP,
   *Stock-based compensation: A multidisciplinary approach* (2d ed. 2015) ............................... 16

Plaintiff Nicholas W. Fulton ("Plaintiff") respectfully submits this Answering Brief in opposition to the Motion to Dismiss (the "Motion") filed by Defendants Michelle Dipp, Richard Aldrich, Jeffrey D. Capello, Mary Fisher, John Howe, III, Marc Kozin, Thomas Malley, John Sexton, and Nominal Defendant OvaScience, Inc. ("OvaScience" or the "Company") (collectively "Defendants"). For the reasons set forth herein, the Motion should be denied.

## I.   INTRODUCTION

This action concerns the compensation awarded to the non-employee directors of OvaScience – compensation that is excessive in relation to the Company's peers. Prior to commencing this action, on April 4, 2017, the Plaintiff, a shareholder of OvaScience, sent a good-faith demand letter (the "Demand") to the Company's Board of Directors (the "Board"). *See* Demand, annexed as Exhibit A to the accompanying Declaration of Jeffrey M. Norton ("Norton Decl."). The Demand described the current compensation plan in relation to prevailing standards and asked that the Board take corrective action in order to bring its non-employee director compensation policies and practices in line with rational, peer-appropriate limits. *Id.*

The Demand was neither styled as a litigation demand nor called for the Company to commence legal action against the Board. Nonetheless, by letter dated April 25, 2017, the Board rejected the Demand (the "Demand Rejection") concluding that "[c]ommencing litigation would serve no purpose other than to needlessly divert corporate assets that otherwise could be used to further the company's efforts to enhance shareholder value." *See* Demand Rejection, Norton Decl., Ex. B.

The Board's strange focus on a litigation demand that was never made was no mistake. Indeed, it is now apparent that the Demand Rejection was not a manifestation of the Board's meaningful consideration of a shareholder's concerns but a calculated effort to establish a specific legal defense where one would not otherwise exist (*i.e.*, rejecting a litigation demand

based on a reasonable exercise of "business judgment"). Of course, Defendants are well-aware that under Delaware law, "director self-compensation decisions are conflicted transactions that 'lie outside the business judgment rule's presumptive protection,'" and thus require a board to make "an affirmative showing that the compensation arrangements are fair to the corporation." *Calma v. Templeton*, 114 A.3d 563, 578 (Del. Ch. 2015) (quoting *Telxon Corp. v. Meyerson*, 802 A.2d 257 (Del. 2002)).

Defendants posit, erroneously, that Plaintiff's Demand shields them from the "entire fairness" burden regardless of the issue at hand. This is, of course, an absurd proposition. For one, the business judgment rule applies only to that aspect of a demand calling for litigation (not applicable here) while the underlying conduct (*i.e.*, self-interested transactions) remains subject to entire fairness. Furthermore, if business judgment were to attach to shareholder demands of *any* nature, it would create perverse incentives whereby shareholders would avoid seeking good-faith reformative action through direct communications in favor of litigation, and corporate boards would reject all calls for reform as a matter of course in order to be relieved from demonstrating entire fairness. Finally, the argument is illogical from a procedural perspective since the Plaintiff or another shareholder could simply file the same action, without regard to the Demand, and the matter would be subject to the entire fairness standard.

Ironically, while attempting to barricade itself behind the wall of business judgment, the Company revealed that it had made material misrepresentations in its Proxy Statements in violation of Section 14(a) of the Securities Exchange Act. Despite having routinely used the Black-Scholes model for calculating the value of awarded stock options (and stating such in its Proxy Statements), the Board, in the Demand Rejection, stated that it believed "(Black-Scholes) is not an appropriate metric for assessing the adequacy and fairness of compensation awards to

non-employee directors." *See* Norton Decl., Exhibit B.

In an effort to mitigate the implications of its glaring admission, the Board asserts a number of nonsensical and irrelevant arguments – each rebutted by the simple fact that the Company, for whatever reason, decided to tell its shareholders that it relied on the Black-Scholes metric for valuing stock option grants made to non-employee directors. When OvaScience made the decision to use Black-Scholes and disclose the same to shareholders, it was making an affirmative representation that the metric was an accurate and reasonable method for valuing stock option grants as required by the Financial Accounting Standards Board (FASB), Accounting Standards Codification (ASC) 718, one of the Generally Accepted Accounting Principles ("GAAP").[1] Alternatively, if the Company believed that Black-Scholes was inapplicable to OvaScience (which the Board now maintains), then it should have disclosed this position to its shareholders and never expressed the opposite view in the first place. Just because the U.S. Securities and Exchange Commission ("SEC") may not require OvaScience to disclose its valuation methods, does not relieve the Company of its obligation to make truthful statements once it elects to do so.

## II.    RELEVANT BACKGROUND

### *The Company*

OvaScience, a Delaware corporation with its principal executive offices located in Waltham, Massachusetts, is a life sciences company that focuses on discovering, developing, and commercializing new fertility treatments. ¶ 9.[2] The Company was incorporated in April 2011

---

[1]    This generally accepted accounting principle is commonly referred to as FASB ASC 718, ASC 718 or Topic 718 or a similar reference.

[2]    References to paragraphs in Plaintiff's Verified Shareholder Complaint ("Complaint") are cited as: "¶ ___."

and its initial public offering ("IPO") took place in May 2013. *Id.*

Despite having accumulated more than $200 million in negative net income, OvaScience's non-employee directors have awarded (and continue to award) themselves excessively high compensation packages. ¶ 38. In 2015, the non-employee directors were awarded an average compensation of $362,434. ¶ 20. By comparison, for the same period, the median total director compensation for Fortune 50 companies was $281,667, and for companies that are constituents of the S&P 500, it was $277,237. ¶ 21. Yet, OvaScience is far from being a Fortune 50 company or even part of the S&P 500. ¶ 22. In fact, OvaScience is a constituent of the Russell Microcap Index[3] where the median compensation for non-employee directors over the past three reported years was $113,665. ¶ 23. Hence, OvaScience, despite not seeing a profit since its IPO, compensates its non-employee directors more than 200% over and above directors of similarly situated companies (*i.e.*, its "peers").

As with many of the Company's peers, OvaScience has used the Black-Scholes pricing model to value its stock option awards each and every year. ¶¶ 29-30. In sum, the Black-Scholes valuation methodology requires a company to make certain assumptions as to the expected dividend yield, price volatility of the company's common stock, the risk-free interest rate for a period that approximates the expected term of the stock options, and the expected term of the stock options. *Id.*

In OvaScience's 2017 Schedule 14A (the "2017 Proxy"), filed with the SEC on April 26, 2017, the Company represented that the value of option awards to directors was calculated as follows:

---

[3]   Defendants claim that OvaScience was not a micro-cap company in 2015. *See* Defendants' Opening Brief ("Def. Br.") at p. 20. Even if true, this fact is irrelevant because it is undisputed that the Company was not close to being a Fortune 50 company or a constituent of the S&P 500.

4

The amounts in the "Option Awards" column reflect the aggregate grant date fair value of stock options granted during the year computed in accordance with the provisions of ASC 718. The assumptions that we used to calculate these amounts are discussed in Notes 2 and 8 to our financial statements included in our Annual Report on Form 10-K for the fiscal year ended December 31, 2016.

¶ 31. In its Annual Report on Form 10-K for the fiscal year ended December 31, 2016, filed with the SEC on March 2, 2017 ("2017 10-K"), OvaScience describes its option valuation methodology as follows:

Since our inception in April 2011, we have applied the fair value recognition provisions of FASB ASC Topic 718, Compensation—Stock Compensation, which we refer to as ASC 718. Determining the amount of stock-based compensation to be recorded requires us to develop estimates of the fair value of stock options as of their grant date. Stock-based compensation expense is recognized ratably over the requisite service period, which in most cases is the vesting period of the award. For awards with performance conditions, we estimate the likelihood of satisfaction of the performance criteria, which affects the awards expected to vest and the period over which the expense is recognized, and recognize the expense using the accelerated attribution model to the extent the condition is deemed probable. Calculating the fair value of stock-based awards requires that we make certain subjective assumptions, including estimating the expected term of the options issued and the estimated volatility of our stock price over the expected term. We used the Black-Scholes option pricing model to value our stock option awards.

¶ 32.

### The Demand

On April 4, 2017, through counsel, Plaintiff mailed the Demand to the OvaScience Board, wherein he indicated that, based on the Company's own valuation metrics (*i.e.*, Black-Scholes), its compensation policies, including option grants, placed OvaScience well beyond the level of its peers and demanded that the Board take corrective action. ¶ 34; Norton Decl., Exhibit A. On April 25, 2017, the Board, through counsel, delivered its Demand Rejection wherein it rejected the Demand, stating, *inter alia*, that:

the valuation metric used for SEC disclosure purposes ***(Black-Sholes) is not an appropriate metric for assessing adequacy and fairness of compensation awards***

5

> ***to non-employee directors*** of biotechnology corporations. A key driver of the
> Black-Scholes model is volatility. Given the extreme volatility of biotechnology
> corporations in general, and OvaScience in particular in 2014-2015, ***a Black-
> Scholes analysis produces "valuations" that bear little or no relationship to the
> actual fairness and adequacy of the compensation awarded***.

Norton Decl., Exhibit B (emphasis added). The Demand Rejection further indicated that the

Board gave no weight to Plaintiff's analysis and calls for reforms and concluded that, "[g]iven

the foregoing, your claim that the Board has somehow 'wasted' corporate assets is legally and

factually untenable. Commencing litigation would serve no purpose other than to needlessly

divert corporate assets that otherwise could be used to further the company's efforts to enhance

shareholder value." *Id.*

Following the exhaustion of Plaintiff's out-of-court efforts to resolve the matters

addressed in the Demand, this action was commenced by filing of the Complaint [Doc. No. 1].

The Complaint alleges that as a result of awarding excessively high compensation, the

Defendants: (1) breached their fiduciary duty of loyalty; (2) breached their fiduciary duty of

good faith; (3) wasted corporate assets; and, (4) were unjustly enriched.

## III.  ARGUMENT

### A.  Plaintiff Sufficiently Pleads Claims for Breaches of Fiduciary Duty[4]

#### 1.  Plaintiff Did Not Make a Litigation Demand

To be considered a Rule 23.1 litigation demand, the "communication must ***specifically***

state: (i) the identity of the alleged wrongdoers, (ii) the wrongdoing they allegedly perpetrated

and the resultant injury to the corporation, and (iii) the ***legal action*** the shareholder wants the

board to take on the corporation's behalf." *Yaw v. Talley*, 1994 WL 89019, at *7 (Del. Ch. Mar.

---

[4]    In the event that Plaintiff's claim for violations of Section 14(a) of the Securities Exchange
Act is dismissed, this Court still has the discretion to exercise supplemental jurisdiction.  *See
Arbaugh v. Y&H Corp.*, 546 US 500, 514 (2006).

6

2, 1994) (emphasis added); *see also Leslie v. Telephonics Office Techs., Inc.*, 1993 WL 547188, at *10 (Del. Ch. Dec. 30, 1993) ("For an action to constitute a valid demand, it must embody a ***specific*** request for the board to take ***legal*** action on behalf of the corporation.") (emphasis added). "The burden of demonstrating that a communication was a demand lies with the party alleging that the communication should be viewed as such." *Khanna v. McMinn*, 2006 WL 1388744, at *13 (Del. Ch. May 9, 2006).

Defendants' assertion that the Demand sought litigation against the Board is unsupported by the plain language of the Demand and is unsupported by law. Indeed, not once does the Demand request the Board file a lawsuit or take any legal action whatsoever. Rather, the Demand specifically asks the Board to take "all necessary action, including revising the awards of stock options and shares of common stock and cancelling any option and stock awards granted under the 2015 Policy until a newly revised director compensation plan may be proposed by the Company and reviewed, considered and approved by shareholders prior to its adoption." Norton Decl. Exhibit A.

Even assuming, *arguendo*, Plaintiff's Demand is ambiguous as to the desired remedy (it is not), Delaware law requires that it *not* be construed as a Rule 23.1 litigation demand. Indeed, courts, having recognized the significance of the pre-litigation demand and its procedural impact on litigation, stress the importance of unambiguous language. *See Khanna*, 2006 WL 1388744, at *13 ("any ambiguity must be construed against a finding of demand.").[5] The court's analysis in

---

[5]    *See also Leslie*, 1993 WL 547188, at *11 ("The peculiarities of the law of demand in Delaware can make it quite significant whether a demand is deemed to be made because a demand on the board to take action is said to concede (and waive any challenge to) the board's ability to exercise a binding business judgment."); *Yaw*, 1994 WL 89019, at *8 ("This Court has recognized the severe procedural consequences to a plaintiff found to have made a pre-suit demand, namely, being precluded from challenging the board's independence and disinterestedness.").

*Yaw v. Talley* is instructive. There, a plaintiff brought a shareholder derivative suit alleging that defendant directors had engaged in self-dealing transactions, corporate mismanagement, waste of corporate assets, and the usurpation of a corporate opportunity. 1994 WL 89019. At issue was whether letters, which included allegations of wrongful acts and drafts of a complaint, written to defendants' counsel, constituted a litigation demand for the purposes of Rule 23.1. *Id.* at *6-8. In holding that the letters did not constitute a Rule 23.1 litigation demand, the court stated that "[p]olicy considerations require […] that ambiguous communications be construed against a finding of a demand." *Id.* at *8. Specifically, the court based its holding on the fact that "[a]lthough the letters do allege wrongdoing by identified persons and do describe the alleged harm to the corporation, they do not specifically request the board to embark upon a particular course of remedial corporate action." *Id.*

Similar to *Yaw*, the Demand in this case did not state that Plaintiff desired the Board to undertake legal action. In fact, the Demand specified the *non-legal* action Plaintiff deemed appropriate to address the issue of excessive non-employee director compensation. Nowhere in the Demand does Plaintiff request legal action, and, like in *Yaw*, Plaintiff states that if the Board refuses to act, Plaintiff will consider his options and act accordingly. *Id.*

Plaintiff's Demand was clearly an effort to bring about corporate reforms without asking the Company to expend time and resources in court. And, to the extent Plaintiff's goal was not evident, public policy requires the Demand not be interpreted as a Rule 23.1 litigation demand. As explained by the court in *Yaw*:

> To interpret an ambiguous communication as a demand would discourage a shareholder from bringing potential wrongdoing to the corporation's attention in a forum other than the courtroom, for fear that his position, should he later decide to sue derivatively, would procedurally be more difficult to support. Furthermore, to require a board to investigate claims asserted ambiguously in an equivocal communication would not be an efficient use of corporate resources, because the

8

> board would lack the information necessary to make a good faith inquiry.
> Therefore, an ambiguous communication (i.e., one which does not clearly and
> specifically embody the three essential elements discussed above) ought not to be
> considered a demand within the meaning of Rule 23.1.

*Yaw*, 1994 WL 89019, at *8.

Indeed, Defendants' interpretation to the contrary is irrational since Plaintiff could have first pursued these claims in court without making any demand at all and Defendants' conduct would remain subject to the entire fairness standard. And, there is nothing stopping the Plaintiff or another shareholder from filing a complaint, without regard to the Demand, and having the entire fairness standard apply. The fact that Plaintiff made the Demand – and sought to preserve corporate resources – should be commended, not penalized. Furthermore, if Defendants' perception was correct (and it is not), such a rule would discourage shareholders from first seeking corporate reforms before resorting to derivative litigation. Fortunately, this is not the law of Delaware.

### 2.    Entire Fairness Standard Applies

Even Defendants must concede that where non-employee directors "have a personal financial interest in their compensation for their service as directors," the entire fairness standard applies. *Calma*, 114 A.3d at 576 (stating that the futility of demand, prompting the use of entire fairness, "has even more force where, as here, the directors received equity compensation from the corporation because those individuals have a strong financial incentive to maintain the status quo by not authorizing any corrective action that would devalue their current holdings or cause them to disgorge improperly obtained profits." (internal marks omitted)) The entire fairness analysis involves questions of "fair dealing and fair price." *Weinberger v. UOP, Inc.*, 457 A.2d 701, 711 (Del. 1983). "The applicability of the entire fairness standard 'normally will preclude a dismissal of a complaint on a […] motion to dismiss.'" *In re Riverstone Nat'l, Inc. S'holder*

9

*Litig.*, 2016 WL 4045411, at \*15 (Del. Ch. July 28, 2016); *see In re Trados Inc. S'holder Litig.*, 73 A.3d 17, 44 (Del. Ch. 2013) (entire fairness is "Delaware's most onerous standard" for a Defendant). "Not even an honest belief that the transaction was entirely fair will be sufficient to establish entire fairness. Rather, the transaction itself must be objectively fair, independent of the board's beliefs." *Gesoff v. IIC Indus., Inc.,* 902 A.2d 1130, 1145 (Del. Ch. 2006).

Plaintiff need only allege that ***either*** the transaction was not the result of fair dealing ***or*** that the compensation was objectively not a fair price. *See Cinerama, Inc. v. Technicolor, Inc.*, 663 A.2d 1156, 1163 (Del. 1995) (explaining that to survive the entire fairness analysis, the burden is on Defendants to "establish to the *court's* satisfaction that the transaction was the product of both fair dealing *and* fair price") (internal marks and citations omitted) (emphasis in original).

### a. OvaScience's Non-Employee Director Compensation is Not the Result of Fair Dealing

Here, Plaintiff alleges facts demonstrating that the awarding of non-employee director compensation was not the product of fair dealing. The fair dealing analysis involves "questions of when the transaction was timed, how it was initiated, structured, negotiated, disclosed to the directors, and how the approvals of the directors and the stockholders were obtained." *Weinberger*, 457 A.2d at 711. Because Plaintiff asserts that OvaScience's non-employee director compensation is excessive in comparison to its peers and lacks any director-specific limits, dismissal is inappropriate.

The court's analysis in *Calma* is instructive. In *Calma*, a shareholder plaintiff initiated a derivative action challenging the compensation awards of non-employee directors. 114 A.3d 563. Specifically, the plaintiff claimed that the company was using an inappropriate peer group to determine its compensation which resulted in excessive non-employee director compensation. *Id.*

at 589. Furthermore, like with OvaScience, the compensation awards lacked any meaningful limits. *Id.* at 588. The court, in denying the motion to dismiss, held that such a determination was a factual question not appropriate for the procedural motion to dismiss stage. *Id.* at 589-90. Here, Plaintiff asserts that, in relation to its peers, OvaScience's non-employee directors received inordinately excessive compensation. ¶¶ 21-29. As in *Calma*, such an allegation states a valid claim and, thus, is not subject to dismissal.

Defendants emphasize that their procedure for determining compensation included the advice of an outside compensation consultant, Pearl Meyer. Def. Br. at pp. 11, 17, 20. Even if this were relevant on a motion to dismiss (and it is not), it is inconsequential given that entire "[f]airness does not depend on the parties' subjective beliefs." *See ACP Master, Ltd. v. Sprint Corp.*, 2017 WL 3105858, at *17 (Del. Ch. July 21, 2017), *opinion corrected and superseded*, 2017 WL 3421142 (Del. Ch. July 21, 2017) (quoting *In re Dole Food Co. S'holder Litig.*, 2015 WL 5052214, at *26 (Del. Ch. Aug. 27, 2015)). Accordingly, the fact that the Board relied on Pearl Meyer does not, in and of itself, establish that OvaScience's non-employee director compensation was the product of a fair process.

Finally, Defendants contend that the director's decisions not to exercise their options, which are now "significantly out of the money and have only a nominal current value" negate any damage to the Company. Def. Br. at p. 20. This argument is disingenuous. In addition to damages (the amount of which are inappropriate to resolve on a motion to dismiss[6]), Plaintiff is seeking equitable relief in the form of directing OvaScience to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws, and requiring OvaScience to issue a corrective disclosure to shareholders. The

---

[6] *Aguilar v. Boulder Brands, Inc.*, 2013 WL 2481549, at *6 (S.D. Cal. June 10, 2013).

compensation practices of OvaScience have not changed, and thus, there remains a substantial risk of future harm to the Company. Indeed, the annual grant of stock awarded each year has remained the same (12,000 shares of common stock).  *See* Exhibits 1 and 2, annexed to the Declaration of Rebecca L. Zeidel [Doc. No. 15] ("Def. Ex."). If the price of OvaScience stock were to increase in any future year, directors will likely exercise their options, causing future harm to the Company.

### b.  OvaScience's Non-Employee Director Compensation is Not a Fair Price

The "fair price" analysis "relates to the economic and financial considerations of the proposed [transaction], including all relevant factors: assets, market value, earnings, future prospects, and any other elements that affect the intrinsic or inherent value of a company's stock."  *Weinberger*, 457 A.2d at 711. Here, the Complaint alleges that OvaScience's non-employee director compensation was substantially more than that of comparable companies – including comparable companies that, unlike OvaScience, are profitable  – making it, objectively, unfair. As Plaintiff alleges in the Complaint, "since OvaScience's IPO, the Company has accumulated more than $200 million in negative net income. Investment analysts expect the losses to continue." ¶¶ 38-39. From a shareholder's perspective, it is difficult to see any justification for the excessive compensation awarded. In any event, Defendants have not come close to satisfying their burden on total fairness.

### B.   Plaintiff States a Claim for Unjust Enrichment

In Delaware, "[t]he elements of unjust enrichment are: (1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law." *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010). Here, Plaintiff's unjust enrichment claim is premised on the same facts

of its breaches of fiduciary duty (*i.e.*, Defendants were unjustly enriched by, through self-dealing, awarding themselves excessive compensation).

Courts consistently uphold claims for unjust enrichment that are duplicative of claims for breaches of fiduciary duties. *See, e.g.*, *Calma*, 114 A.3d at 592-94 (sustaining unjust enrichment claim where breach of fiduciary duty claim was upheld); *Dubroff v. Wren Holdings, LLC*, 2011 WL 5137175, at *11 (Del. Ch. Oct. 28, 2011) (same). Accordingly, because Plaintiff has stated a claim for breaches of fiduciary duties, Plaintiff has also stated a claim for unjust enrichment.

### C.    Plaintiff States a Claim for Waste of Corporate Assets

To state a claim for waste of corporate assets, Plaintiff "must allege that the directors authorized an exchange that was so one-sided that no business person of ordinary, sound judgment could conclude that the corporation has received adequate consideration." *In re DSI Renal Holdings, LLC*, 574 B.R. 446, 476–77 (Bankr. D. Del. 2017) (internal marks and citations omitted). Here, Plaintiff alleges that Defendants wasted corporate assets by awarding themselves highly excessive compensation that could not have been the product of good faith.

Defendants' citation to *Espinoza v. Zuckerberg*, 124 A.3d 47 (Del. Ch. 2015) is directly on point, albeit not for the reason Defendants suggest. In *Espinoza*, a shareholder of Facebook, Inc. initiated a derivative action asserting, *inter alia*, a claim of waste of corporate assets for the award of excessively high compensation. *Id.* at 67. There, unlike here, the plaintiff merely claimed that "the average compensation of Facebook's non-employee directors is 43% higher than the average compensation for directors in a specified peer group of companies." *Id.* The court, in dismissing the claim, noted that the plaintiff refrained "from alleging that the all-star cast on Facebook's board is so lacking in talent or exerts so little effort that Facebook receives nothing in return for compensating its members." *Id.* at 67-68. Indeed, the lack of such an

allegation precluded the court from finding that a claim for corporate waste had been pleaded. *Id.*

Here, Plaintiff not only claims that OvaScience's non-employee director compensation was relatively excessive, but also asserts that the high level of compensation has no justification. Unlike the "all-star cast" of directors in *Espinoza*, OvaScience's directors have been at the helm while the Company has suffered staggering losses. As opposed to Facebook's "lower-than-average net income," OvaScience has experienced, since its IPO, *$200 million in negative net income*. ¶ 38. Furthermore, unlike Facebook, analysts expect OvaScience's losses to continue with the consensus forecast indicating that the company will continue to report losses for the current and next fiscal years, in the amounts of $55 million in negative net income for the year ending December 31, 2017, and $44 million in negative net income for the year ending December 31, 2018. ¶ 39. In light of the financial health of the Company, no business person of ordinary, sound judgment could conclude that the Defendants have earned such disproportionally high compensation.

### D.   Defendants' Material Misstatements and Omissions in OvaScience's Proxy Statements Regarding the Use of Black-Scholes Violate Section 14(a) of the Exchange Act

"To state a claim under section 14(a), a plaintiff must aver that (1) a proxy statement contained a material misrepresentation or omission which (2) caused the plaintiff injury and (3) that the proxy solicitation itself, rather than the particular defect in the solicitation materials, was an essential link in the accomplishment of the transaction." *California Pub. Employees' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 144 (3d Cir. 2004). "[T]he basic test of materiality in a section 14(a) setting is whether it is probable that a reasonable shareholder would attach importance to the fact falsified, misstated or omitted in determining how to cast his vote on the question involved." *Gould v. Am.-Hawaiian S. S. Co.*, 535 F.2d 761, 771 (3d Cir. 1976).

14

In its 2015, 2016, and 2017 Proxy Statements, the Company stated it "used the Black-Scholes option pricing model to value our stock option awards." ¶ 32. Yet, in the Demand Rejection, the Board stated that "the valuation metric used for SEC disclosure purposes (Black-Sholes) is not an appropriate metric" and that "in particular in 2014-2015, a Black-Scholes analysis produces 'valuations' that bear little or no relationship to the actual fairness and adequacy of the compensation awarded." Norton Decl., Exhibit B. It certainly is reasonable to conclude that investors would find it material that the Company squarely rejects the utility of the very metric it uses to measure the value of the equity component of director compensation.

Notwithstanding, Defendants assert that the Proxy Statements were not misleading because "assessment of the 'fair valuation' of the cost to the Company of an option grant for purposes of complying with accounting standards" is different than the "assessment of the adequacy and fairness of a compensation award to the recipient." Def. Br. at p. 10. This is a nonsensical argument based on the conflation of two separate issues: material misstatements versus excessive compensation. Indeed, the issue of whether OvaScience's non-employee directors were and continue to be overcompensated is irrelevant to the issue of whether the Company made material misstatements and/or omitted material information regarding its valuation of options grants using the Black-Scholes methodology.

Ironically, Defendants also assert that "the methodology used to value those options computed [sic] in accordance with the requirements of ASC 718." Def. Br. at p. 11. FASB ASC ¶ 718 requires that the model used to ascertain the fair value of stock options "is applied in a manner consistent with the fair value measurement objectives and other requirements of this Topic, is based upon established principles of financial theory, and reflects all the substantive

terms and conditions of the award." FASB ASC ¶ 718-10-55-11.[7] Here, the Board freely admits

that Black-Scholes is not an appropriate measurement for OvaScience and similarly situated

companies. Thus, the selection of Black-Scholes could not have been in accordance with FASB

ASC 718, because the Company believed that Black-Scholes is inapplicable to OvaScience.

Additionally, Defendants argue that because the Company "indicated in its proxy

statements that the Company used additional information, other than the Black-Scholes

valuation, to evaluate director compensation as a whole," its statements regarding Black-Scholes

were not misleading. Def. Br. at 11. As with Defendants' other arguments, this is wholly

irrelevant. OvaScience affirmatively disclosed that it used Black-Scholes to value its stock

options, despite its *undisclosed* belief that it was unreliable and improper. The fact that

"shareholders were already aware that OvaScience used additional methods to assess and

evaluate the compensation of its directors," *id.*, does not somehow undo the Company's

misrepresentations and omissions regarding the use of Black-Scholes.

Defendants attempt to downplay the omission by claiming that the Company was not

required to include references to Black-Scholes, and therefore, its statements cannot be

misleading. This is not only false, but, at best, means that the Board allowed OvaScience to

include Black-Scholes merely out of custom despite having a contrary belief as to its

inapplicability, or, at worst, it is an admission that the Board made the Company publish false

statements for personal gain. Either way, the Board allowed OvaScience to omit material facts

---

[7] FASB ASC 718 gives companies wide discretion to use the valuation model that best applies to their business. *See* PricewaterhouseCoopers LLP, *Stock-based compensation: A multidisciplinary approach*, at 6-2 (2d ed. 2015) ( FASB ASC 718 "permits companies to select the option-pricing model that best fits their unique circumstances […] for most employee stock options, companies will have flexibility in selecting the option-pricing model used to estimate the fair value of their stock-based compensation awards."); *see also* Ernst & Young LLP, *Financial reporting developments: A comprehensive guide, Share-based payment*, at 194 (Oct. 2017) ("ASC 718 does not prescribe the use of a specific option-pricing model.").

regarding the applicability of Black-Scholes and the calculation of non-employee director compensation.

Defendants' reliance on *Seinfeld v. Becherer*, 461 F.3d 365 (3d Cir. 2006) is misplaced. In *Seinfeld*, a shareholder asserted claims for violations of §14(a) because in its proxy statements, the company did not include any valuation of stock options. *Id.* at 373. Specifically, the "plaintiff argued that the proxy statement was misleading because it did not include a Black-Scholes valuation and instead merely disclosed that the company paid each director an annual retainer and granted the directors stock options." *Id.* The court held that the company was not required "to measure the cost of its stock-option plan by means of an option-pricing model like Black-Scholes, and the failure to provide such an estimation did not render the Proxy Statement false or misleading." *Id.* at 374. In sum, *Seinfeld* stands for the unremarkable proposition that OvaScience was not required to use the Black-Scholes valuation model for its stock options. Here, however, OvaScience did measure the cost of its stock-option plan by means of an option-pricing model and stated expressly that it used the Black-Scholes option-pricing method for calculating compensation without any indication that it believed the methodology to be inapplicable or improper.

Finally, Defendants argue erroneously that the value of stock options was not material to shareholders and did not influence their vote. However, courts have repeatedly held that "[t]he S.E.C. regulations regard information concerning management remuneration in general, and management participation in stock option plans in particular, as being important to shareholders in proxy solicitations involving the election of directors." *Bertoglio v. Texas Int'l Co.,* 488 F. Supp. 630, 647 (D. Del. 1980); *see Fisher v. Kanas*, 467 F. Supp. 2d 275, 282 (E.D.N.Y. 2006) (discussing that the "erroneous calculations of compensation" would be material to

shareholders); *see, e.g., Parsons v. Jefferson-Pilot Corp.*, 789 F. Supp. 697, 702 (M.D.N.C. 1992) (holding that disclosing whether stock options were restricted or unrestricted was "important in order for a shareholder to determine the nature and value of the stock being awarded" and thus, was material); *In re Tyson Foods, Inc.*, 2007 WL 2351071, at *4 n. 18 (Del. Ch. Aug. 15, 2007) ("When directors speak out about their own compensation, or that of company managers, shareholders have a right to the full, unvarnished truth."); *Ausikaitis v. Kiani*, 962 F. Supp. 2d 661, 678 (D. Del. 2013) ("shareholders would consider information regarding the policy of timing stock option grants to be material, e.g., to their approval of the Compensation Plans or reelection of directors"). Thus, Defendants are wrong in arguing that information regarding the valuation of stock options is immaterial to shareholders.

### E.    The Complaint Sufficiently Alleges a Causal Connection Between the Material Misstatements and Harm to Shareholders

Plaintiff sufficiently alleges a causal connection between Defendants' material misrepresentations/omissions and the harm to OvaScience. Plaintiff alleges that the Board materially misrepresented the amount of compensation directors were receiving while soliciting votes for their election by shareholders. In other words, shareholders were deprived of material information regarding the service and compensation of non-employee directors while being solicited for support. The undisclosed fact that the Board willfully used improper metrics to calculate their own compensation would have influenced the basis upon which shareholders had voted. Indeed, it is well recognized that alleging "that corporate directors were elected on the basis of materially false or misleading proxy statements" satisfies the element of causation. *In re Midlantic Corp. S'holder Litig.*, 758 F. Supp. 226, 235–36 (D.N.J. 1990).

Moreover, Plaintiff is not only seeking monetary damages, but is also requesting an order "[d]irecting OvaScience to take all necessary actions to reform and improve its corporate

18

governance and internal procedures to comply with applicable laws" and "[r]equiring OvaScience to issue a corrective disclosure to shareholders; disclosing that OvaScience relied upon an inappropriate option value calculation method in its 2015, 2016, and 2017 public filings." It is well-established that "[t]he element of causation can be sufficiently proved where there is a real threat of reoccurrence of an alleged proxy violation in the context of a future transaction." *Intl. Broadcasting Corp. v Turner*, 734 F Supp 383, 390 (D. Minn. 1990). When shareholders voted for directors throughout the years, they have been unaware that the Board, on account of using what it believed to be an inappropriate compensation valuation model, may have actually understated their compensation. For example, in the Company's 2016 Proxy Statement, attached as Def. Ex. 1, the average value of the stock option grants was $362,434. Yet, only one year prior, using the same Black-Scholes model, OvaScience disclosed stock option grants with an average value of merely $81,863. *See* Norton Decl., Exhibit C. Thus, when voting to elect directors in 2015, shareholders were unaware that the actual value of director compensation could have been more than ***300%*** greater than what was disclosed. Because the Company is awarding the same amount of shares while using the same Black-Scholes model, there is high likelihood that directors will again misrepresent their compensation to the shareholders voting to keep them in their positions. This will cause unacceptable financial harm to the Company. Accordingly, Plaintiff has alleged that there is a sufficient causal link between OvaScience's material misrepresentations and the election of directors.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion to Dismiss in its entirety.

Dated: November 17, 2017

**RIGRODSKY & LONG, P.A.**

By:  */s/ Brian D. Long*

Seth D. Rigrodsky (#3147)

**OF COUNSEL:**

Brian D. Long (#4347)
Gina M. Serra (#5387)

**NEWMAN FERRARA LLP**

Jeremy J. Riley (#5791)

Jeffrey M. Norton

2 Righter Parkway, Suite 120

1250 Broadway, 27th Floor

Wilmington, DE 19803

New York, New York 10001

(302) 295-5310

 (212) 619-5400

SDR@rl-legal.com

jnorton@nfllp.com

BDL@rl-legal.com
GMS@rl-legal.com

**KRANENBURG**

JJR@rl-legal.com

Werner R. Kranenburg

80-83 Long Lane

*Attorneys for Plaintiff*

London EC1A 9ET
United Kingdom
+44-20-3174-0365
werner@kranenburgesq.com

20